**Alex. Kedes, Appellee, v. Christian County Coal Com-
pany, Appellant.**

1. MINES AND MINERS ACT—*what evidence not competent in
action for wilful violation.* The conditions existing in a mine long
after the accident are not competent without proof that they had re-
mained unchanged in the interim.

2. MINES AND MINERS ACT—*when instruction in action charging
wilful violation erroneous.* An instruction is erroneous which
departs from the provisions of the statute with reference to the
purpose for which props, caps and timbers are to be provided.

3. MINES AND MINERS ACT—*what not defense to action charg-
ing wilful violation.* The contributory negligence of the plaintiff,
if any, is not available as a defense in an action brought under the
Mines and Miners Act charging a wilful violation thereof.

Action in case for personal injuries. Appeal from the Circuit
Court of Christian county; the Hon. SAMUEL L. DWIGHT, Judge,

presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed May 19, 1909.

J. C. & W. B. McBride, for appellant.

Hogan & Wallace, for appellee.

Mr. Justice Baume delivered the opinion of the court.

Appellee recovered a verdict and judgment against appellant in the Circuit Court of Christian county for $1,500, as damages for personal injuries alleged to have resulted from the wilful failure of appellant to comply with certain provisions of the Mines and Miners Act. The declaration contains five counts.

The first count which alleges common law negligence was dismissed by appellee before trial.

The second count alleges the wilful failure of appellant's mine examiner to inspect and observe appellee's working place and to inscribe on the walls thereof with chalk the day and date of his visit and to place a conspicuous mark thereat as notice to appellee of the dangerous conditions existing therein, and further that appellant permitted appellee to enter the mine to work therein, not under the direction of the mine manager until all conditions had been made safe, as provided by the provisions of Section 18 of said Act.

The third count alleges the wilful failure of appellant to provide a sufficient supply of props, caps and timbers when demanded for the securing by appellee of the roof of his working place, as provided in clause "A," section 16 of said act.

The fourth count alleges the wilful failure of appellant's mine manager to visit and examine the various working places in the mine and to see that all dangerous places above and below were properly marked, and that danger signals were displayed where required, as provided by clauses "A" and "D" of said section 16.

The fifth count alleges the wilful failure of appel-

lant's mine manager to provide appellee with a reasonably safe place in which to work, which duty is alleged to be imposed upon such mine manager by clause "G" of section 34 of said act.

On November 14, 1906, appellee, with his buddy, was engaged in mining coal in room 15 off of the south sixth entry on the east side of appellant's mine. The room was from thirty to thirty-five feet in width and the face of the coal is variously estimated to have been from 220 to 350 feet from the room-neck. Appellee had fired a buster shot and two rib shots about two feet from the rib on the north side of the room, and had undermined the face of the coal about six feet and to the length of eighteen feet and to the height of two and one-half feet, and had set sprays about four and one-half feet long to support the coal while he worked beneath it. While appellee was so at work a large quantity of coal and clod fell upon him from the top, breaking both of his legs. For a distance of from thirty to forty feet east from the face of the coal there were no props supporting the roof. Room 14 had been driven in advance of room 15, and four cross-cuts had been driven through the walls or pillar between said rooms. The usual width or thickness of the pillars between the rooms in appellant's mine was twenty-five feet, and it is claimed by appellee that the coal in said rooms 14 and 15 had been permitted by appellant to be so improperly mined that the pillars between said rooms were not of sufficient width to properly support the roof, and that this condition resulted in causing a squeeze in the face of the coal in appellee's room, whereby the coal was crushed and the rock top rendered more liable to fall out. Appellee testified that when he drove the last cross-cut between the two rooms the wall or pillar was only about twenty-four inches in width, but the overwhelming preponderance of the evidence establishes the width of said wall to have been from ten to twelve feet. However this may be, we think the jury were warranted in find-

ing that a dangerous condition existed in appellee's room by reason of the insufficiency of the pillars separating it from room 14, and that appellant's mine manager had notice of such condition.

It is conceded by appellant that no conspicuous mark was placed at appellee's working place, as notice of a dangerous condition, and appellee testified that upon the day of his injury there was no mark apparent of the day and month, as showing that the mine examiner had visited said room upon that day.

It is urged that the court improperly admitted evidence of demands for props by appellee to the drivers, without requiring proof of the existence of a custom in the mine whereby the miners were permitted to make demand for props to the drivers instead of the mine manager, or that the demands for props so made by appellee were communicated by the drivers to the mine manager. While the record discloses some ground for this criticism we think the testimony of Bartoulini, one of the drivers, tends to show the existence of a custom in the mine whereby the miners were authorized to make demand of the drivers for props. Westbrooks, one of the drivers, also testified that he communicated appellee's demand for props to the mine manager. Appellant, by the ninth instruction given at its instance, recognized the fact that there was evidence in the case tending to show the existence of a custom whereby a miner was authorized to demand props of others than the mine manager.

Among the crucial questions in the case was that relating to the condition and extent of the pillars separating rooms 14 and 15, and the consequent liability of a squeeze occurring at appellee's working place in room 15. Over the objection of appellant, and without any evidence tending to show that the conditions in that respect were the same, appellee was permitted to prove that a squeeze in fact occurred in room 15, whereby the room fell in, five or six weeks subsequent to the time appellee was injured. The admission of

this evidence was clearly error, and in view of the closely conflicting evidence bearing upon the question of appellant's liability, such error must be held to have been so prejudicial as to require a reversal of the judgment. Counsel for appellee have not seen fit to attempt any justification of the action of the court in admitting the evidence referred to, and as we are unable to perceive any, it may not improperly be presumed that none exists.

The fifth instruction given at the instance of appellee purports to state the statutory duty imposed upon the mine manager to provide a sufficient supply of props, caps and timbers. The first clause of the instruction follows the language of the statute and is not objectionable, but the second clause of the instruction is a departure from the provisions of the statute with reference to the purpose for which such props, caps and timbers are to be provided, and in this respect the instruction was misleading.

The seventh instruction given at the request of appellee confuses the duties imposed by the statute upon the mine manager and mine examiner respectively. The contributory negligence of appellee, if any, was not available as a defense in the case and the eighth instruction offered on behalf of appellee was properly given.

We have considered other objections urged to certain given instructions on behalf of appellee and to the modification of certain instructions tendered by appellant and find nothing therein worthy of notice or discussion.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*